ams
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KANSAS JUDICIAL WATCH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 06-4056-JAR |
| ) | |
| MIKEL L. STOUT, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO CERTIFY, MOTION TO STAY INJUNCTIVE RELIEF, AND MOTION TO DISMISS**

In a July 19, 2006 Memorandum and Order ("Order") (Doc. 51),[1] this Court granted plaintiffs Kansas Judicial Watch's,[2] the Honorable Charles M. Hart's, and Robb Rumsey's motion for a preliminary injunction that enjoined and prohibited the enforcement of Kan. S. Ct. R. 601A, Canon 5A(3)(d)(i) and (ii) and Canon 5C(2) against any candidate for judicial office, including an incumbent judge. The Court denied plaintiffs' motion for injunctive relief with regard to Canon 3E(1), which obligates judges to recuse themselves from cases in which they have certain conflicts of interest or biases. The Court now considers the following motions by defendants Mikel L. Stout, Jennifer L. Jones, Nancy Anstaett, Patrick Brazil, Theodore B. Ice, Christina Pannbacker, William B. Swearer, Carolyn Tillotson, Robert Fleming, Bruce Buchanan, Mary Davidson Cohen, Robert A. Creighton, David J. King, Lawrence E. Sheppard, Edward G.

---

[1] 440 F. Supp. 2d 1209 (D. Kan. 2006).

[2] Plaintiff Kansas Judicial Watch appears on the docket in this case, yet in the more recent pleadings, plaintiff refers to itself as "Kansas Judicial Review." To the Court's knowledge, no motion has been filed or granted requesting an amendment to reflect the name change of this plaintiff. Consequently, the Court refers to the parties as they appear on the record, meaning it continues to consider Kansas Judicial Watch as a party plaintiff.

Collister, Jr., Stanton A. Hazlett, Frank D. Diehl, Alexander M. Walczak, Janith A. Davis, and Gayle B. Larkin: (1) Motion to Certify a Question to the Kansas Supreme Court (Doc. 40); (2) Motion to Stay Injunctive Relief Pending Appeal (Doc. 60); and (3) Motion to Dismiss (Doc. 56). As described more fully below, the Court declines to certify a question to the Kansas Supreme Court and denies defendants' motion to stay injunctive relief pending appeal. Defendants' motion to dismiss, which simply preserves issues for appeal that have already been ruled on, is denied.

## I. Background

This case involves a First Amendment challenge of certain canons in the Kansas Supreme Court's Rules Relating to Judicial Conduct by plaintiffs Kansas Judicial Watch ("KJW"), the Honorable Charles M. Hart, and Robb Rumsey. KJW is a political action committee that claims not to be associated with any political candidate, party, or campaign committee. KJW gathers information and publishes questionnaires about judicial candidates up for election in Kansas. KJW intended to publish responses to its 2006 Judicial Candidate Questionnaire ("Questionnaire") by judicial candidates before the primary election on August 1, 2006 and would like to do so in future elections, as well. The Questionnaire, which is set forth in detail in the Court's prior Order, presents eight propositions about law and policy to judicial candidates and provides five options for the candidate to mark: Agree, Disagree, Undecided, Decline to Respond, and Refuse to Respond. The statements cover such issues as school finance, abortion, and gay marriage. Judge Hart is running for re-election in 2008 and seeks to personally solicit support by going door-to-door to obtain signatures on his nomination petition. Plaintiff Rumsey won the Republican primary election for the Sedgwick County Division 4 seat and faces a

general election on November 7, 2006.  Defendants are all members of either the Kansas Commission on Judicial Qualifications or the Disciplinary Administrator's Office, and defendant Larkin is Admissions Attorney.

The Court incorporates by reference the detailed relevant factual background set forth in its July 19 Order.  In that Order, the Court granted a preliminary injunction against the enforcement of Canon 5A(3)(d)(i) and (ii), or the "pledges and promises and commit clauses" which states that,

> (3) A candidate for a judicial office:
> . . . .
>> (d) shall not:
>> (i) make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office;
>> (ii) make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court.[3]

The Court also enjoined enforcement of Canon 5C(2), or the "solicitation clause," which states:

> A candidate* shall not personally solicit or accept campaign contributions or solicit publicly stated support nor shall a candidate serve as his or her own campaign treasurer.  A candidate subject to public election* may, however, establish committees of responsible persons to solicit and accept reasonable campaign contributions, to manage the expenditure of funds for the candidate's campaign and to obtain public statements of support for his or her candidacy. Such committees may solicit and accept reasonable campaign contributions and public support from lawyers.  A candidate's committees may solicit contributions and public support . . . no earlier than one year before an election and no later than 90 days after the last election in which the candidate

---

[3] Kan. S. Ct. R. 601A, Canon 5A(3)(d)(i), (ii).

participates during the election year.[4]

In granting a preliminary injunction regarding these canons, the Court found that plaintiffs were substantially likely to succeed on the merits of their First Amendment challenges, both on their face and as applied to the plaintiffs in this case, primarily under the holding in *Republican Party of Minnesota v. White*.[5]  In *White*, the Supreme Court declared unconstitutional Minnesota Code of Judicial Conduct, Canon 5(A)(3)(d)(i), or the "announce clause," which states that "a candidate for judicial office shall not 'announce his or her views on disputed legal or political issues.'"[6]  The Supreme Court found that the announce clause did not pass strict scrutiny because it was not narrowly tailored to further a compelling state interest in judicial impartiality.[7]  The Court clarified that there is one clear interpretation of judicial impartiality, which is lack of bias for or against a party to a proceeding.[8]  To the contrary, lack of bias toward issues is not a compelling state interest.[9]  Finally, the Court discussed the interpretation of judicial impartiality as "open-mindedness," which the Court did not explicitly hold constituted a compelling state interest, but instead found that the announce clause was underinclusive in serving this interest.[10]

In its Order, this Court found that plaintiffs had a substantial likelihood of success of

---

[4]Kan. S. Ct. R. 601A, Canon 5C(2); (Ex. 7).  The asterisks indicate terms that are defined separately in the Code of Judicial Conduct.

[5]536 U.S. 769 (2002).

[6]*Id.* at 770 (quoting Minn. Code of Jud. Conduct, Canon 5(A)(3)(d)(i) (2002)).

[7]*Id.* at 776, 779–80.

[8]*Id.* at 776.

[9]*Id.* at 778.

[10]*Id.* at 779–80.

showing that the pledges and promises and commit clauses in Kansas are overbroad because they chill a real and substantial amount of protected speech.  The Court found that plaintiffs also had a  substantial likelihood of success of showing the solicitation clause was not narrowly tailored to serve the compelling state interest in judicial impartiality, either meaning judicial impartiality toward parties, or meaning open-mindedness.  Having found a substantial likelihood of success on the merits as to these clauses, the Court concluded that plaintiffs were able to show irreparable injury absent the injunction, that the threatened injury to the movant would outweigh any damages the injunction may cause defendants, and that the injunction was not adverse to the public interest.  Defendants filed an interlocutory appeal of the Court's Order granting the preliminary injunction with regard to these clauses.

However, the Court denied plaintiffs' motion to preliminarily enjoin enforcement of the recusal canon, finding that it was narrowly tailored to serve a compelling interest in judicial impartiality meaning impartiality towards parties.  The Court concluded that this canon would operate as a check against unprotected speech that could be allowed under the injunction. Plaintiffs did not file an interlocutory appeal of the denial of their motion for preliminary injunction with regard to the recusal canon.

On June 23, 2006, defendants filed a motion asking the Court to certify the following question to the Kansas Supreme Court: "whether [the promises and pledges and commit clauses], prohibiting judicial candidates from pledging, promising or committing to how they would decide a case, operate[] in fact as the functional equivalent of an "announce" clause?"  The motion was not fully briefed, however, until after this Court's Order was filed.  In their motion to certify, defendants argue that the Court should certify this question because there is currently no

"binding" interpretation by the Kansas Supreme Court on these clauses. Defendants characterize the issue as an unsettled question of state law and argue that certification would promote the Court's interest in judicial economy. Defendants further argue that if the Kansas Supreme Court finds that the clause does not operate as a de facto announce clause, then plaintiffs' claims on these clauses would be moot.

Defendants have also filed a motion to stay the injunction pending appeal. Defendants argue that they have a reasonable likelihood of success on the merits of their appeal based, in part, on a Note that the Commission appended on August 2, 2006 to Judicial Ethics Opinion JE 139, the Judicial Ethics Advisory Panel's ("Panel") opinion that discouraged judicial candidates from answering the Questionnaire. The Note states that the Commission "respectfully rejects the Panel's conclusion in JE-139. Under Republican Party of Minnesota v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002), judges and judicial candidates are allowed to publicly announce their views on legal, political, or other issues. The Commission is not bound by advisory opinions."[11]

**II. Motion to Certify** (Doc. 40)

Defendants move this Court to certify a question of state law to the Kansas Supreme Court pursuant to the Uniform Certification of Questions of Law Act, K.S.A. § 60-3201. Pursuant to K.S.A. § 60-3201, the Kansas Supreme Court may answer questions of law certified to it, when requested by the certifying court:

> [I]f there are involved in any proceeding before it questions of law

---

[11](Doc. 61, Ex. 1 at 2.)

>
> of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

The decision to certify rests within the discretion of the Court.[12] It is not to be "'routinely invoked whenever a federal court is presented with an unsettled question of state law.'"[13] In fact, it is the duty of the federal courts to decide questions of state law when necessary to render a judgment, unless there exists "some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred."[14] And even if there is no state law governing an issue, certification is not compelled.[15]

The Court denies defendants motion for certification. First, the question defendants seek to have certified is not an unsettled question of state law. The issue in this case is whether certain Kansas Judicial Canons unconstitutionally prohibit speech—a federal constitutional question. While it is true that this question would be easier to resolve had the Kansas Supreme Court spoken to this issue in the context of a disciplinary action, that is not necessary for this Court to rule. The Court has already made a determination on these issues which are now pending appeal.

Second, the Court does not find that the goals of the certification procedure would be served here. "'When used properly, certification saves time, energy, and resources, and helps

---

[12]*Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716–17 (10th Cir. 2005); *Marzolf v. Gilgore*, 924 F. Supp. 127, 129 (D. Kan. 1996).

[13]*Marzolf*, 924 F. Supp. at 129 (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406 (10th Cir. 1988)).

[14]*Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (quoting *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943)).

[15]*Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1217 n.22 (10th Cir. 2002); *Boyd Rosene & Assocs. v. Kan. Mun. Gas*, 178 F.3d 1363, 1365 (10th Cir. 1999).

build a cooperative judicial federalism.'"[16]  The Court finds that certification at this time would be wasteful of the parties' and the Court's time, energy, and resources that have already been spent briefing, researching, and determining the issues involved in the motion for preliminary injunction.  Further, this Court granted plaintiffs' request at the time the Complaint was filed to expedite the preliminary injunction proceedings to accommodate the upcoming election timetable.  Granting the motion to certify at this time would only serve to delay this matter, which the Court already determined warranted an expedited schedule.  The Court, therefore, denies defendants' motion to certify.

### III.  Motion to Stay Injunctive Relief Pending Appeal (Doc. 60)

Under Fed. R. Civ. P. 62(c), the Court may, in its discretion, "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."  The Court must consider the following factors to determine whether to issue a stay of the injunction pending appeal: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will suffer irreparable injury unless the stay is granted; (3) whether granting the stay will result in substantial harm to the other parties to the appeal; and (4) the effect of granting the stay upon the public interest.[17]  "[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed."[18]  This relaxed probability of success requirement will be

---

[16]*Boyd*, 178 F.3d at 1365 (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974)).

[17]*E.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *In re Lang*, 414 F.3d 1191, 1201 (10th Cir. 2005).

[18]*F.T.C. v. Mainstream Marketing Servs.*, 345 F.3d 850, 852 (10th Cir. 2003).

demonstrated if the party seeking the stay raised "'questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'"[19]

### A. *The Harm Factors*

Defendants argue the harm factors tip in their favor. Specifically, defendants maintain that enforcement of the injunction harms the Commission, the Kansas Judicial Branch, and the public and that these harms outweigh the harms suffered by plaintiffs if the injunction is not enforced.

First, defendants argue the Commission is harmed by enforcement of the injunction because it "eliminates the Commission's ability to enforce these important Judicial Canons, which in turn hinders the Commission's interest in protecting the public from biased judges. . . . Should a judge engage in this type of misconduct, the Commission will not be able to address it." As the Court already addressed in its prior Order, the harm to plaintiffs outweighs any harm to the Commission. Initially, this is because the loss of First Amendment freedoms per se constitutes irreparable injury.[20] Further, plaintiffs and the public would suffer irreparable harm by virtue of the fact that the Questionnaire could not be published prior to the election in November. Also, enforcement of the recusal canon provides a check against unprotected speech that would make a candidate partial to certain parties in a particular case or controversy.

Defendants make the conclusory statement that this Court's injunction "has the ultimate

---

[19]*Id.* at 853 (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246–47 (10th Cir. 2001)).

[20]*See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005).

effect of blocking the Kansas Supreme Court from exercising its jurisdiction in those types of issues." Defendants suggest that it is vital that the Kansas Supreme Court be able to discipline candidates for violations of the pledges and promises and commit clauses because it is the only way to protect the public from biased judges. Again, the Supreme Court determined in *White* that the only compelling state interest in judicial impartiality is the interest in a lack of bias toward parties in a particular case or controversy. The recusal canon is a sufficient mechanism by which to avoid this type of impartiality, and at the same time protect legitimate speech that may be affected by the pledges and promises and commit clauses. This Court's decision to grant a preliminary injunction in no way interferes with the jurisdiction of the Kansas Supreme Court over judicial disciplinary matters.

The Court is likewise unpersuaded by defendants' argument that plaintiffs will not suffer harm from a stay because plaintiff Rumsey won his primary election, because Judge Hart need not obtain signatures for his nomination petition until 2007, and because a stay would not prevent KJW from publishing the responses it has received to the Questionnaire. But the Court found a likelihood of success on the merits of plaintiffs' claim that the canons are facially invalid, meaning the named plaintiffs are not the only ones to suffer harm from enforcement of the canons. Also, even if KJW could publish responses, absent the injunction, judicial candidates may be chilled from answering the Questionnaire in the first place. The Court finds that the balance of harms weighs in favor of plaintiffs.

### B. *Likelihood of Success on the Merits*

In its prior Order, this Court held that the pledges and promises and commit clauses were

10

overbroad, but declined to find a substantial likelihood of success on the merits of plaintiffs' vagueness claim. The Court found further that the solicitation clause was not narrowly tailored to serve a compelling state interest and, therefore, failed to pass strict scrutiny. Defendants make no showing of likelihood to succeed on the merits of their appeal regarding the solicitation clause. Because defendants only focus their arguments on the pledges and promises and commit clauses, the Court will only evaluate the request for stay of the injunction as to that claim. Defendants assert two arguments about why they are now substantially likely to succeed on appeal of the preliminary injunction concerning the pledges and promises and commit clauses: (1) the issues are unsettled law; and (2) the Panel's advisory opinions should not be attributed to the Commission and the Kansas Supreme Court.

**1. Legal Authority**

Defendants first argue that they have a reasonable likelihood of success on appeal because the issues raised on appeal are unsettled law. Defendants specifically point to two cases pending appeal in the Third and Ninth Circuits, *Pennsylvania Family Institute, Inc. v. Black*,[21] and *Alaska Right to Life Political Action Committee v. Feldman*.[22] In *Black*, the district court ruled only on issues of justiciability, finding that the plaintiffs lacked standing and that the case was not ripe for adjudication.[23] In contrast, this Court found that the case was justiciable and proceeded to grant the motion for preliminary injunction on the merits. A decision by the Third Circuit in *Black* will not serve to clarify the law concerning the First Amendment issues that the

---

[21] No. Civ. 105 CV 217, 2005 WL 2931825 (M.D. Pa. Nov. 4, 2005).

[22] 380 F. Supp. 2d 1080, 1081 (D. Alaska 2005).

[23] *Black*, 2005 WL 2931825, at *6–7.

Tenth Circuit will evaluate on appeal.

*Feldman*, on the other hand, was a decision granting summary judgment to the plaintiffs on First Amendment challenges to substantially similar pledges and promises and commit clauses.[24] Even if *Feldman* is reversed by the Ninth Circuit on appeal, it would not serve to clarify the law for the Tenth Circuit. As the Court explained in its Order, there is no Tenth Circuit decision construing *White*, and all of the available federal district court decisions construing pledges and promises and commit clauses on the merits have reached the conclusion that they are unconstitutional.[25]

Defendants point to state court decisions since *White* that find the pledges and promises and commit clauses to be constitutional.[26] These state court cases all involve a disciplinary action against a judicial candidate for violation of the states' judicial canons. In contrast, the case before this Court challenges the canons in the context of a First Amendment challenge under 42 U.S.C. § 1983. These state law cases make the confines of their respective judicial canons clear. In *In re Kinsey*, for example, the Supreme Court of Florida determined that the clauses allow a candidate to state "his or her personal views, even on disputed issues."[27] The court drew the line, however, at statements that stressed allegiance to certain parties and

---

[24]*Feldman*, 380 F. Supp. 2d at 1084.

[25]*See id.*; *North Dakota Fam. Alliance, Inc. v. Bader*, 361 F. Supp. 2d 1021, 1021–45 (D.N.D. 2005); *Family Trust Foundation of Ky., Inc. v. Wolnitzek*, 345 F. Supp. 2d 672, 695 (E.D. Ky. 2004), *stay denied*, 388 F.3d 224 (6th Cir. 2004). In *Indiana Right to Life, Inc. v. Shepard*, the Northern District of Indiana orally denied the motion for preliminary injunction on October 14, 2004 and a dispositive motion deadline was set for September 6, 2005. (Doc. 28, Indiana Order.) The Court has not been provided with a full transcript of the October 14, 2004 hearing, and is unaware of any further progress in that case since that time.

[26]*In re Watson*, 794 N.E.2d 219 (N.Y. 2003); *In re Kinsey*, 852 So. 2d 77 (Fla. 2003); *see also In re Raab*, 793 N.E.2d 1287 (N.Y. 2003) (addressing judicial canon governing political activity).

[27]*Kinsey*, 852 So. 2d at 87.

witnesses. In *Watson*, the Court of Appeals of New York stressed that a prior decision had made clear that

> [M]ost statements identifying a point of view will not implicate the 'pledges or promises' prohibition. The rule precludes only those statements of intention that single out a party or class of litigants for special treatment, be it favorable or unfavorable, or convey that the candidate will behave in a manner inconsistent with the faithful and impartial performance of judicial duties if elected.[28]

These cases serve to clarify and develop the judicial canons in Florida and New York and make clear to judicial candidates what conduct is proscribed by these clauses. These courts' decisions make clear that Florida and New York interpret the clauses in way that is narrowly tailored to further judicial impartiality and the appearance of judicial impartiality, in the form of a compelling state interest in lack of bias against particular parties.

Kansas has not so clarified its interpretation of the pledges and promises and commit clause after *White*, which has led to this Court's finding that the clauses are overbroad. Defendants argue that this shows the need for the Court to certify the question. But the Court has already explained that it may not certify this question, as it is not one of state law and that it would not further interests in judicial economy. Moreover, the Court found that the clauses were facially unconstitutional because the legitimate reach of the clauses is much narrower than the illegitimate reach. Further, the Panel's opinions concerning these clauses do not serve to clarify the enforcement position of the Commission or the Kansas Supreme Court, but suggest that any speech that pledges or promises or commits is subject to discipline. As discussed fully in the Court's prior Order, this constitutes a real and substantial threat that the pledges and promises and commit clauses chill the free speech rights of those judges and judicial candidates who wish

---

[28]*Watson*, 794 N.E.2d at 303.

to engage in protected speech, but fear discipline for doing so.

### 2. Authority of the Panel

Defendants rely strongly on the argument that the Panel, who issued the advisory opinion, does not have any binding authority on the Commission or the Kansas Supreme Court. Because the Commission appended a Note to JE 139, defendants maintain that any chilling effect of that opinion is now moot.

At the evidentiary hearing, Carol Green, Secretary of the Commission, testified that once an advisory opinion is issued, it is set on the agenda for the Commission to review. The Commission has no obligation to comment on the advisory opinions, and at the time of the hearing, it had only occurred on two occasions. She further testified that the lack of a statement from the Commission was not a sign that the Commission approved or disapproved of an advisory opinion. Ms. Green testified that JE 139 was not circulated on the same timetable as usual because this lawsuit was initiated so soon after the advisory opinion was issued. The Commission's Note on JE 139 was added after this Court's prior Order and states that the Commission disagrees with the advisory opinion and that "judges and judicial candidates are allowed to publicly announce their views on legal, political, or other issues. The Commission is not bound by advisory opinions."

While the Court understands that advisory opinions are not binding, Kansas Supreme Court Rule 650 makes clear that the fact that a judge or judicial candidate has relied upon it must be taken into account by the Commission when determining whether to recommend discipline. Defendants appear to suggest that no judge or judicial candidate is entitled to rely upon an advisory opinion for guidance because neither the Commission nor the Kansas Supreme Court will ever be bound by it. The Court finds this to be an untenable position. If anything, the

addition of the Note to JE 139, which attempts to contradict the Panel's finding, makes the clauses ambiguous, and strengthens plaintiffs' arguments that the clauses are vague. In its Order, the Court discussed briefly how the Panel's decision proscribed a vagueness challenge because the advisory opinion made clear the course of conduct proscribed. If anything, the addition of this Note now creates an ambiguous enforcement position by the Kansas Supreme Court.

Finally, even if the Commission's Note to JE 139 is somehow dispositive or clarifying, it does not negate the Court's findings of a substantial likelihood of success of showing a real and substantial threat that the promises and pledges and commit clauses chill protected speech in relation to their plainly legitimate sweep. The Court did not rely exclusively on JE 139 in making this finding. It also evaluated the text of the clauses themselves, and noted the lack of binding authority by the Kansas Supreme Court on the issue. Also, the record shows that it is the Kansas Supreme Court and not the Commission who has ultimate authority to interpret these clauses in the context of a disciplinary action. Even if the Commission disagrees with the Panel's finding on a matter, it is not binding on the Kansas Supreme Court. The Court finds that this recent Note attached to JE 139 does not translate into a likelihood that defendants will succeed on the merits of their appeal.

**IV. Motion to Dismiss** (Doc. 56)

Defendants filed a motion to dismiss, preserving their standing, ripeness, and abstention arguments, previously raised in their response to the motion for preliminary injunction. The Court already addressed these issues in its prior Order and denies the motion to dismiss for substantially the same reasons stated therein.

**IT IS THEREFORE ORDERED BY THE COURT** that:

15

(1)   Defendant's Motion to Certify a Question to the Kansas Supreme Court (Doc. 40) is **denied**;

(2)   defendant's Motion to Stay Injunctive Relief Pending Appeal (Doc. 60) is **denied**;

(3)   defendant's Motion to Dismiss (Doc. 56) is **denied**.

**IT IS SO ORDERED.**

Dated this 6th day of October 2006.

    S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

Kansas Judicial Watch v. Stout, No. 06-4056-JAR, *Memorandum and Order Denying Defendants' Motion to Certify, Motion to Stay Injunctive Relief, and Motion to Dismiss*, October 6, 2006.