# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KANSAS JUDICIAL WATCH, *et al.*,  )
                                  )
                    Plaintiffs,   )
                                  )
          vs.                     )        Case No. 06-4056-JAR
                                  )
MIKEL L. STOUT, *et al.*,         )
                                  )
                    Defendants.   )
_____)

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Third Motion for Attorney Fees (Doc. 127), with attached
Statement of Consultation, filed subsequent to the Tenth Circuit Court of Appeals' decision
remanding this case for a determination of the reasonable fees to be awarded to Plaintiffs as
prevailing parties in this action.[1]  Plaintiffs filed a memorandum in support of their fee request,
as well as billing records and affidavits.  Defendants oppose the fee request as procedurally
deficient and as unreasonable.  There have been eight briefs filed in total on these issues; it is
more than fully briefed.  As set forth more fully below, the Court awards Plaintiffs $151,470.08
in reasonable fees and expenses.  The Clerk is directed to enter Judgment in this amount and
Plaintiffs may file their Bill of Costs and memorandum in support according to the procedures
set forth in D. Kan. Rule 54.1.  Plaintiffs may also file a supplemental declaration in support of
the fees and expenses it has incurred in responding to the Defendants' Petition for Writ of
Certiorari before the United States Supreme Court.  Before filing this supplement, however, the

---

[1]This motion was filed before the Tenth Circuit mandate and before its decision declining a rehearing and a
rehearing en banc.  The mandate was filed on October 11, 2011, so this Court now has jurisdiction to decide the
reasonableness of the fee request.

parties are ordered to meet and confer and make a good faith attempt to negotiate these remaining fees without court intervention.  If Plaintiffs must file a supplemental declaration, it shall include a statement of consultation.

## I.      Background

Plaintiffs Kansas Judicial Watch ("KJW"), the Honorable Charles M. Hart, and Robb Rumsey filed this action on May 24, 2006.  Plaintiffs asserted claims under 42 U.S.C. § 1983, challenging various canons of the Kansas Supreme Court's Rules of Judicial Conduct as unconstitutional on their face and as applied and enforced.

First, Plaintiffs challenged Canon 5A(3)(d)(I) and (ii), referred to as the "pledges and promises clause" and "commit" clause.  They argued that these clauses were unconstitutionally overbroad and vague on their face and as applied to the KJW Questionnaire.

Plaintiffs further argued that Canon 3E(1), the "recusal canon," was unconstitutional as applied to the KJW Questionnaire because it chilled speech by subjecting judges to discipline for announcing their views on disputed legal and political issues.

Plaintiffs made the following claims regarding Canon 5C(2), the "solicitation of publicly-stated support" clause: (1) the clause was unconstitutionally vague and overbroad on its face and prohibited and chilled plaintiffs' freedom of speech and association; (2) the Commission on Judicial Qualifications' enforcement policy of this clause, as expressed in Advisory Opinion JE 100, unconstitutionally chilled and prohibited Plaintiffs' freedom of speech and association; (3) the Commission's enforcement policy of this clause as expressed in JE 117 unconstitutionally chilled and prohibited the freedom of speech and association of Judge Hart; (4) the clause unconstitutionally prohibited and chilled plaintiffs' freedom of speech and association as applied

2

to the Questionnaire; and (5) the clause unconstitutionally prohibited and chilled Plaintiffs' freedom of speech and association as applied to the nomination petitions for which Judge Hart sought to personally solicit signatures.

Plaintiffs sought declaratory judgments that these provisions are unconstitutional on their face, as applied, and as enforced. Plaintiffs also asked the Court, by way of preliminary and permanent injunction, to prohibit Defendants from enforcing these Canons and from filing or considering complaints based on these Canons against judicial candidates who respond to the Questionnaire or solicit signatures for nomination petitions. Defendants argued that the case was not justiciable on several grounds and opposed the issuance of a preliminary injunction on the merits.

This Court held an evidentiary hearing on Plaintiffs' motion for preliminary injunction and heard oral argument on June 28, 2006. On July 19, 2006, the Court entered a Memorandum and Order granting in part and denying in part plaintiffs' motion for preliminary injunction (Doc. 51). The Court found that the case was justiciable, as Plaintiffs had standing, the case was ripe, and the Court declined to abstain. The Court granted the motion for preliminary injunction with respect to Canon 5A(3)(d)(I) and (ii) (pledges and promises and commit clauses) and 5C(2) (solicitation of publicly stated support clause), and denied the motion with respect to Canon 3E(1) (recusal canon). The Court enjoined and prohibited Defendants from enforcing the subject canons, Kan. S. Ct. R. 601A, Canon 5A(3)(d)(i) and (ii) and Canon 5C(2), against any candidate for judicial office, including an incumbent judge.

Defendants filed an interlocutory appeal of the Court's decision granting the preliminary

injunction.[2]  On March 12, 2008, the Tenth Circuit issued an opinion finding that "plaintiffs'

claims rest on sufficiently novel and determinative questions of state law that certification is

warranted.  In order to adjudicate plaintiffs' constitutional claims, we must determine the scope

and meaning of the three state canons at issue."[3]  The court certified five questions to the Kansas

Supreme Court.[4]

On December 5, 2008, the Kansas Supreme Court issued an opinion that answered the

certified questions and construed the judicial canons as they existed at the time the opinion was

filed.[5]  In January 2009, the Kansas Supreme Court amended the judicial code by adopting Rule

601B.[6]  This rule eliminated the publicly-stated support clause in Canon 5C(2) and narrowed the

language and scope of the pledges and promises and commit clauses.

On April 17, 2009, the Tenth Circuit dismissed the appeal, vacating the preliminary

injunction and remanding to this Court for dismissal.[7]  The court found that the case became

moot on appeal due to the intervening amendment to the judicial canons.  The Tenth Circuit

applied the general rule that "repeal of a challenged statute causes a case to become moot

because it extinguishes the plaintiff's legally cognizable interest in the outcome, rendering any

---

[2]There was no cross-appeal of the Court's denial of the motion for preliminary injunction on the recusal canon.

[3]*Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008).

[4]*Id.* at 1122.

[5]*Kan. Judicial Review v. Stout*, 196 P.3d 1162, 1171 (Kan. 2008) (acknowledging the Commission's recommended amendments to the Kansas Code of Judicial Conduct and explaining that its decision is based on "our present Code of Judicial Conduct").

[6]Kan. Sup. Ct. R. 601(B) (2009) (effective Mar. 1, 2009).

[7]*Kan. Judicial Review v. Stout*, 562 F.3d 1240 (10th Cir. 2009).

remedial action by the court ineffectual."[8]  In accordance with the Tenth Circuit's mandate, this Court dismissed the action on June 1, 2009.

Plaintiffs filed their first motion for attorney fees on June 12, 2009, claiming to be prevailing parties pursuant to 42 U.S.C. § 1988 based on the preliminary injunction this Court issued on June 28, 2006.  Defendants responded, arguing that plaintiffs are not prevailing parties under the statute.  Plaintiffs filed a renewed motion for attorney fees on July 13, 2009, this time attaching supporting documents and affidavits to support their claim for attorney fees, including a Statement of Consultation.  Defendants again responded, opposing the motion on the same basis.  The Court denied Plaintiffs' motions for attorneys' fees, finding that they were not prevailing parties under § 1988.[9]  Plaintiffs appealed that ruling and the Tenth Circuit reversed, finding that this Court's decision granting Plaintiffs a preliminary injunction provided some of the relief sought in the complaint and "the fact that the preliminary injunction was vacated does not deprive Appellants of their status as 'prevailing parties.'"[10]  Plaintiffs have now filed a third motion for attorneys' fees, seeking fees and expenses incurred from May 26, 2006, through the renewed motion for attorneys' fees and including both appeals.

On February 1, 2012, this Court deferred ruling on the instant motion at Defendants' request until the United States Supreme Court ruled on their Petition for Certiorari that was filed on December 29, 2011.  On March 7, 2012, Plaintiffs notified the Court of the Supreme Court's decision to deny the petition and asked for a deadline to supplement their fee application to

---

[8]*Id.* at 1246 (citing *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)).

[9]Doc. 119.

[10]*Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1240–41 (10th Cir. 2011).

include fees incurred opposing the petition.

## II.    Discussion

Plaintiffs seek reasonable attorneys' fees and expenses incurred in this action prosecuting their successful claims from before the Complaint was filed up until the present.  In an action under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee."[11] The Tenth Circuit has determined that Plaintiffs are "prevailing parties" under the statute.  And the Tenth Circuit has previously recognized that "while § 1988(b) grants the district court 'discretion' in awarding fees, . . . Congress intended this discretion to be narrow once the plaintiff meets the 'prevailing party' inquiry."[12]  The Court proceeds to determine a reasonable award of attorneys' fees and expenses.

## A.    Statement of Consultation Requirement

Defendants ask the Court to deny Plaintiffs' fee application because they have not complied with the local rule requiring consultation prior to filing, pointing to a deficiency when Plaintiffs first requested attorneys' fees in 2009.  This Court's local rule requires that the moving party "promptly initiate consultation with the other party or parties."[13]  If the parties disagree on the fee amount, the moving party must file a Statement of Consultation within 30 days of filing the motion.  The Statement of Consultation must state that the parties are unable to reach agreement on the fee award and include the date of consultation, the names of those who

---

[11]42 U.S.C. § 1988(b).

[12]*Phelps v Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997).

[13]D. Kan. R. 54.2(a).

participated, and the specific results achieved.[14]  Plaintiffs filed their most recent motion for

attorneys' fees on August 19, 2011, and attached a Statement of Consultation that complies with

this rule.  The instant motion is a renewed motion for attorneys' fees, and the Court finds that

Plaintiff complied with the local rule in filing this motion.  The Court declines to revisit whether

the Statement of Consultation filed more than two years ago complies with the local rule.

Plaintiffs have renewed their motion, and the Court will only consider whether this renewed

motion, as supplemented, complies with the rule.

Moreover, according to the Statement, Defendants took the position that consultation was

not appropriate at the time because a request for a Tenth Circuit rehearing was pending.  Given

Defendants' refusal to consult, the Court is not inclined to find that Plaintiffs failed to abide by

this Court's local rule, which exists to encourage agreement between the parties as to fee

requests and minimize court intervention.  The Court is satisfied that Plaintiffs attempted to

consult and that the parties are unable to reach agreement.

**B.      Time and Expenses Incurred on Interlocutory Appeal**

Defendants also argue that Plaintiffs are not entitled to reasonable attorneys' fees

incurred in prosecuting the interlocutory appeal.  The general rule in the Tenth Circuit is that an

application for appeal-related fees must be made first to the appellate court.[15]  A narrow

exception exists for interlocutory appeal-related fees awarded under a fee-shifting statute.[16]  The

Tenth Circuit has explained its precedent as follows:

---

[14]D. Kan. R. 54.2(c)–(d).

[15]*Hoyt v. Robson Cos.*, 11 F.3d 983, 984 (10th Cir. 1993).

[16]*Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1179 (10th Cir. 2010); *Crumpacker v. Kan. Dep't of Human Res.*, 474 F.3d 747, 756 (10th Cir. 2007).

> In *Crumpacker*, we reaffirmed the *Hoyt* rule, stating that
> "appeal-related fees . . . must generally be awarded by us."
> Nevertheless, we recognized a narrow exception for interlocutory
> appeal-related fees in cases brought under Title VII or other
> fee-shifting statutes. Under these limited circumstances, we held
> that "parties who prevail on interlocutory review in this court, and
> who subsequently become prevailing parties under Title VII or
> another fee-shifting provision at the conclusion of merits
> proceedings, are implicitly entitled to reasonable attorneys' fees
> related to the interlocutory appeal."[17]

Defendants contend that Plaintiffs' interlocutory appeal in this matter does not qualify under the

narrow *Crumpacker* exception so this Court is without jurisdiction to award Plaintiffs for the

time and expense incurred on the interlocutory appeal and related proceedings before the Kansas

Supreme Court after the Tenth Circuit certified questions of state law.[18]  Plaintiffs respond that

these matter are properly recoverable under the interlocutory appeal exception set forth in

*Crumpacker*.

The Court agrees with Plaintiffs that they are entitled to interlocutory appeal-related fees,

despite the fact that they did not first apply to the Tenth Circuit for such fees.  Because the

Kansas Supreme Court proceeding was a direct result of questions certified by the Tenth Circuit

on the interlocutory appeal, those fees may be awarded by this Court as well.  Defendants argue

that the interlocutory appeal exception is not applicable because Plaintiffs did not "prevail" on

interlocutory appeal and did not "subsequently become prevailing parties" under a fee shifting

provision at the conclusion of the merits proceedings.  There is no question that the fees at issue

---

[17]*Flitton*, 614 F.3d at 1180 (quoting *Crumpacker*, 474 F.3d at 756) (citations omitted).

[18]Defendants do not contest that Plaintiffs may recover the reasonable fees and expenses incurred in their appeal of the prevailing party determination.  Indeed, Plaintiffs applied to the Tenth Circuit for an award of appeal-related fees and the Tenth Circuit determined that they "are entitled to an award of reasonable fees and costs for this appeal" and remanded to this Court for a determination of the reasonable fees and costs to be awarded.  Case No. 09-3356, Order, slip op. at 2 (Oct. 3, 2011).

are appeal-related fees in a case brought under a fee-shifting statute.  The Tenth Circuit made clear that the preliminary injunction issued by this Court "materially altered the legal relationship between the parties by providing relief on the merits of Appellants' claims.  This injunction continued in effect until the Kansas Supreme Court took actions that mooted the case."[19]  Unlike a reversal on the merits, when a preliminary injunction is vacated on mootness grounds, the plaintiff is not deprived of its prevailing party status.[20]  Given this holding, the Court finds that the narrow exception to the *Hoyt* rule applies here and Plaintiffs are entitled to interlocutory appeal-related fees and expenses despite having not applied to the Circuit in the first instance.

## C.   Reasonableness of Plaintiffs' Fee Request

In determining reasonable attorneys' fees, the court arrives at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.[21]  The applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.[22]  Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.[23]  The Court may then adjust the lodestar upward or downward as necessary.[24]

---

[19]*Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1240–41 (10th Cir. 2011).

[20]*Id.*

[21]*Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[22]*See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).

[23]*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[24]*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

1.      **Lodestar Amount**

a.      **Reasonable Hours**

The Court must first determine the amount of hours reasonably expended by counsel for

Plaintiffs.[25]  Plaintiffs contend that out-of-state counsel reasonably spent 958.3 hours on this

litigation and local counsel spent 12.1 hours.[26]  In order for the applicant to satisfy its burden of

proving the number of hours reasonably spent on the litigation, the party must submit

"meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are

sought, all hours for which compensation is requested and how those hours were allotted to

specific tasks."[27]  "The prevailing party must make a good-faith effort to exclude from a fee

request hours that are excessive, redundant, or otherwise unnecessary."[28]  The Court "is justified

in reducing the reasonable number of hours if the attorney's time records are 'sloppy and

imprecise' and fail to document adequately how he or she utilized large blocks of time."[29]

Plaintiffs' counsel claim that they exercised billing judgment by reducing the hours spent

on excessive, redundant or otherwise unnecessary hours.  Specifically, counsel claim to have

excluded 174 hours for work performed in the district court proceedings, 59 hours for work on

the interlocutory appeal and certification proceedings, and 18.1 hours on the prevailing party

appeal.  Mr. Bopp states in his multiple declarations that these hours are reduced both in the

---

[25]*Case*, 157 F.3d at 1250.

[26]Plaintiffs claim 487 hours spent on prosecuting the matter before this Court and preparing the fee application; 358.9 hours spent on the interlocutory appeal and certification proceeding; and 112.4 hours spent on the prevailing party appeal thus far.  *See* Doc. 131, Ex. C at 86; Doc. 131, Ex. D at 35; Doc. 138, Ex. 2 at 20, Ex. 4 at 4.

[27]*Case*, 157 F.3d at 1250 (citation omitted).

[28]*Robinson*, 160 F.3d at 1280.

[29]*Id.* (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

10

exercise of billing judgment and for time spent pursuing the unsuccessful recusal canon claim. Because counsel aggregated these hours, it is difficult to ascertain exactly which of the 174 hours spent on the district court proceedings were determined to be redundant, unnecessary, or otherwise reduced in the exercise of billing judgment.  However, since Plaintiffs did not appeal the denial of a preliminary injunction with respect to the recusal clause, it is clear that all 77.1 hours reduced during the two appellate proceedings were based on billing judgment.  The Court has reviewed the invoices submitted by both Bopp, Coleson & Bostrom and by local counsel, Austin K. Vincent, and is generally satisfied that, after reducing time spent on the unsuccessful recusal canon claim, these attorneys exercised appropriate billing judgment to ensure that their charges were reasonable and necessary to this litigation.

After the Court determines whether counsel exercised billing judgment, it must evaluate the hours expended on each task and determine if they are reasonable.[30]  This determination requires the Court to consider such factors as the complexity of the case, the number of reasonable strategies pursued and the responses necessitated by the maneuvering of the other side, and potential duplication of services.[31]  But there is no requirement that the Court "identify and justify each disallowed hour.  Nor is their [sic] any requirement that district courts announce what hours are permitted for each legal task."[32]

There are two sides to the complexity factor.  On one hand, the Court acknowledges that Plaintiffs pursued novel constitutional issues in this case, specifically, application of the

---

[30]*Case*, 157 F.3d at 1250.

[31]*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

[32]*Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)).

Supreme Court's decision in *Minnesota v. White*[33] to various judicial canons.  On the other hand, as Defendants point out, the Bopp firm spearheaded similar litigation in several courts throughout the country, so the issues presented in this case were hardly unique to these attorneys. These attorneys' were arguing issues that they were intimately familiar with; this specialized knowledge was emphasized by Bopp's declaration in support of the rates requested.  The Court keeps this in mind when determining the reasonable hours spent, particularly on research and drafting.  The Court finds that Plaintiffs pursued a reasonable number of strategies, pursuing a constitutional challenge to essentially three judicial canons.  They immediately briefed and argued the preliminary injunction motion, and sought to consolidate it with the trial in the hopes of containing the length of the case.  The Court does not find an increased amount of work was required by the maneuvering of the other side.

Defendants make several arguments that go to the reasonableness of the hours expended on the litigation in this case: (1)  hours should be deducted for work on unsuccessful claims and motions; (2) Plaintiffs should only be allowed to recover 50% of the hours spent between May 26, 2006, when the Complaint was filed, and July 19, 2006, when this Court entered the Preliminary Injunction; (3) the case was overstaffed and hours should be deducted for time spent on background research; (4) hours should be deducted based on insufficient detail in many of the billing entries and the inability to determine the basis for discounts; (5) the time spent on the prevailing party appeal was excessive; and (6) hours should be reduced for time spent preparing the fee application because new attorneys were involved who necessarily spent time getting up to speed on the case.  The Court addresses each of these arguments in turn.

---

[33]536 U.S. 765 (2002).

### i.       Time Spent on Unsuccessful Claims and Motions

Defendants argue that Plaintiffs' hours should be reduced by 50% to adequately reflect their partial success in this case.  Partial success in a case is most commonly addressed by courts after the lodestar is calculated, in deciding whether it should be adjusted downward.[34]  In *Hensley*, the Supreme Court explained that the lodestar does not end the inquiry because a fee adjustment upward or downward may be justified by such factors as the "results obtained."[35] The Court stated: "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success . . . in light of the considerations we have identified."[36]

Plaintiffs claim that they reduced 18% of their time spent on expenses incurred in drafting the Complaint, 25.4% of time spent in drafting the preliminary injunction motion, and 19% of the time spent drafting the preliminary injunction reply brief.  The Court finds that these amounts generally correlate to the time it would expect counsel to have spent on the recusal canon for those particular tasks.  This was not a case where the Plaintiffs succeeded on merely half of their claims.  The Court granted the motion for preliminary injunction with respect to the pledges and promises and commit clauses and the solicitation of publicly stated support clause. The Court denied the motion with respect to the recusal canon, which was the subject of far less analysis in the briefs and the Court's order as compared to the other claims.  The Court finds that

---

[34]*See Holland v. GMAC Mortg. Corp.*, No. 03-2666-CM, 2007 WL 293931, at 2 n.2 (D. Kan. Jan. 29, 2007) (collecting cases).

[35]461 U.S. 424, 434 (1983).

[36]*Id.* at 436.

the reductions voluntarily made by Plaintiffs for work performed on the Complaint and preliminary injunction briefing are reasonable in light of the time spent on the recusal canon claim. To the extent any further reduction is warranted, the Court will address that when it considers whether an adjustment to the lodestar should be applied based on Plaintiffs' partial success.

The Court also agrees with Plaintiffs that their time spent on the motion to consolidate is recoverable. Defendants point the Court to no authority for the proposition that time spent on unsuccessful motions are not recoverable. Preparation of these motions and briefs would undoubtedly be billed to the paying client, and based on Plaintiffs' submissions, they were billed to Kansas Judicial Watch. The relevant question is not whether the motions were successful, or even necessary, "but rather whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."[37] As the Court has already discussed, the motion to consolidate was filed in an attempt to promote judicial efficiency; it aimed to collapse the preliminary injunction hearing with a trial on the merits. It was not a lengthy motion, and it was addressed in conjunction with the motion for preliminary injunction.

Defendants also complain that Plaintiffs seek reimbursement for "post-injunction proceedings that they lost," but it is not clear the proceedings to which they refer. There were a series of filings after the Court's preliminary injunction order. Plaintiffs unsuccessfully sought to amend the complaint to add another plaintiff and other claims, which was denied. Plaintiffs have correctly deducted this time given that proposed-Plaintiff Yost has recovered his own

---

[37] *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 404 F. Supp. 2d 1281, 1284 (D. Kan. 2005).

attorneys' fees and expenses in a separate case.[38]  Still, upon review, the Court finds several

entries that reflect time spent on the Yost matter.  The Court deducts .5 hours from Marzen's

lodestar, 1.4 hours from Neeley's lodestar, .3 hours from Woudenberg's lodestar, and .25 hours

from Vincent's lodestar accordingly.  Defendants also filed several motions during this time

period to which Plaintiffs were required to respond, and the Court declines to find that this time

was unreasonably spent.

Finally, the Court also must reduce Plaintiffs' hours for time spent on this case when

there was no case activity.  Between November 16, 2006 and March 12, 2008, there was no case

activity before the district court except for a motion to withdraw filed by counsel, an

administrative matter.  Yet, Plaintiffs seek time for a legal intern to "research the standard of

review in preliminary injunction," and for a senior associate to conference about the same.[39]

This is unreasonable and these hours must be deducted as follows: 3.2 hours from Katie Bopp's

lodestar (all hours spent by this timekeeper) and .3 hours from Coleson's lodestar.

### ii.      Recoverable Time Period

Defendants argue that Plaintiffs should only be allowed to recover fees incurred between

the time the Complaint was filed and the time this Court entered the Preliminary Injunction.

This argument is tied to Defendants' contention that the hours must be reduced to reflect that

Plaintiffs did not succeed on their claims associated with the recusal canon, which the Court

addressed in the previous section.  In terms of the time period for which Plaintiffs may recover

---

[38]Case No. 06-4122-JAR.

[39]Likewise, there was no activity in the interlocutory appeal at that time except for supplemental authority filings as referenced in the interlocutory appeal billing records.

fees and expenses incurred, the Court has already explained that Plaintiffs may recover for the time spent prosecuting the interlocutory appeal.  Further, work done before the complaint is filed may be compensable, so long as the work was "both useful and of a type ordinarily necessary" to achieve the final result obtained.[40]  Typically, under this standard, "pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable."[41]  More than one-third of the Bopp firm's billing records for the district court proceedings pre-date the filing of the Complaint.  This work is properly recoverable, as it includes pre-complaint investigation, legal research and informal discovery.  Therefore, Plaintiffs may properly recover for the time period starting on February 16, 2006, and ending with their most recent submission on the fee application.  The Court also grants Plaintiffs an opportunity to supplement their fee request to include fees incurred in responding to Defendants' Petition for Writ of Certiorari, after the parties meet and confer.

### iii.    Overstaffing and Background Research

Defendants complain that plaintiff utilized too many attorneys in this case and that there is significant time billed for reviewing background material, which generally is not compensable.[42]  Indeed, twelve timekeepers billed their time in this case, but the majority of the time was billed by four associates: Jeffrey Gallant, Anita Woudenberg, Josiah Neeley, and Susan Lee.  Mr. Bopp states in his declaration in support of the fees and expenses incurred in

---

[40]*Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986).

[41]*See Lucas v. White*, 63 F. Supp. 2d 1046, 1058–59 (N.D. Cal. 1999).

[42]*See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1256–60 (10th Cir. 2005) ("time spent reading background material designed to familiarize an attorney with an area of the law is presumptively unreasonable.").

prosecuting the case and preparing the fee petition before this Court, "to minimize expenses, most time-intensive work was delegated to Ms. Lee, Ms. Woudenberg, and Mr. Neeley who have lower hourly billing rates than myself.  However, to take advantage of my own extensive experience, frequent conferences enabled me to instruct and supervise their work . . . ."[43]  Indeed, there is significant time charged by these timekeepers for conferences; time that is billed by each attorney participating in the conference.  While Bopp's declaration supports the need for his conferences with these associates, it does not justify the amount of conferences the associates had with one another and often with Thomas Marzen, who Bopp describes as having "partner-level" experience.[44]  Defendants should not be required to compensate Plaintiffs more than once for time spent by multiple associate attorneys in the same meeting.

The Court is also troubled by the amount of background research by associates contained in the billing records.  Bopp, Coleson & Bostrom holds itself out as specializing in First Amendment Law and has filed several suits similar to the instant lawsuit in courts around the country.  And despite the fact that the associates at this firm have less experience than Bopp, they too hold themselves out as Constitutional Law specialists.[45]  This, combined with the firm's participation in other similar lawsuits, including the *White* case, suggests that the background research about the issues involved in this case would have been far more limited than that reflected in the billing records.  For example, Susan Lee billed the majority of time in this case

---

[43]Doc. 131 ¶ 13.

[44]See Doc. 131, Ex. C, at 5 (3/14/2006 conference between Lee and Woudenberg), 6 (3/16/2006 conference between Lee, Woudenberg, and Marzen), 11 (same), 17–18 (same), and 24 (5/9/2006 conference between Lee and Woudenberg), for a few examples.

[45]*See* Doc. 131, Ex. B.

from February through August 2006, 203.2 hours.  Of this time, several hours were spent reviewing cases such as *White*, other federal court cases in which Bopp's firm participated, and law review articles on judicial speech.  This time is not compensable.  While the Court acknowledges Plaintiffs' argument that they have already reduced Lee's and Marzen's time, these reductions have already taken into account with respect to the exercise of billing judgment and partial success; the Court finds that a further reduction is warranted. Rather than itemize reductions for each attorney based on over-conferencing and background research, the Court applies a 15% reduction to the associate hours[46] claimed by Plaintiffs and a 10% reduction to Marzen's hours.

### iv.    Insufficient Detail on Billing Entries

Defendants argue that Plaintiffs' counsel failed to keep meticulous time records, citing their use of block billing, vague descriptions for time entries, and difficulty determining the reasons for discounts.  "'Block billing' is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks."[47]  There is no rule in the Tenth Circuit that "mandat[es] reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing."[48]  But the Court may discount the requested hours if it finds that the records submitted do not allow the Court to determine how the hours were allotted to specific tasks and the reasonableness of that

---

[46]The Court will not apply this discount to Neeley's travel hours that were billed at a reduced rate.

[47]*Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *3 (D. Kan. Jan. 8, 2009).

[48]*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

time.[49]  The only examples of block billing provided by Defendants are Bopp's time entries for June 27 and 28, 2006, for the preliminary injunction hearing.  But the Court is satisfied that these time entries for travel are reasonable.  Bopp states in one of his declarations that the attorneys in his firm

> normally bill a standard 10 hours per day when they are out of town for a case, regardless of whether they were actually in transit on those days.  They also make every effort to use time spent waiting productively by reviewing case materials, preparing for the event to which they are traveling, or other similar activities.  Because actual work time typically exceeds 12 hours or more on days outside the office, the 10 hour standard represents a sizable undercharge from the actual billable hours expended.[50]

Defendants do not provide any other examples of inappropriate block billing.  And the Court easily finds that the records submitted allow it to determine how each attorney's hours were allotted to specific tasks and whether that time was reasonable.

Defendants further argue that Plaintiffs' time records are not meticulous because they fail to provide enough detail about the work counsel performed for each entry.  While Defendants complain that "most" entries have "these types of problems," the only specific examples are two entries on February 16, 2006.  One entry is by Marzen for "Conference with [] Woudenberg and review materials/research," and the next entry is by Woudenberg for "Conference with Thomas J. Marzen."  First, the Court notes that these are the first two entries on the billing records and finds it safe to assume that this was an initial meeting about the instant case.  The Court has reviewed the billing records and finds that this entry is not representative of conference

---

[49]*Id.*

[50]Doc. 138, Decl. of James Bopp ¶ 15.

entries—most, in fact, do indicate the subject matter of the conference.  Second, the Court has already discounted Plaintiffs' hours for time spent on these conference, finding an unreasonable amount of conferences between associates that are double-billed.  The Court declines to reduce these hours further and finds that the billing records on the whole provide sufficient descriptions that allow the Court to determine whether the time spent was reasonable.

Finally, Defendants complain about the "no charge" entries in the billing records, asking "[w]hy are certain charges are 'no charge' when nearly identical entries are 'billable.'"[51] Plaintiffs explain that entries listed as "no charge" with identical entries charged to the client represent voluntary reductions either for partial success or in the exercise of billing judgment. The Court finds this to be self-evident from its review of the billing records and supported by Mr. Bopp's declaration and declines to apply any reduction to the claimed hours on this basis.

<b>v.      Time spent on Prevailing Party Appeal</b>

Defendants incorporate by reference their opposition to the fee request before the Tenth Circuit on the prevailing party appeal, arguing that Plaintiffs are entitled to no more than $10,000 in fees, citing overstaffing, and the failure to reduce excessive, redundant, or otherwise unnecessary hours.  First, the Court notes that it has already determined that some reductions in hours for overstaffing will be applied.  And the Court has determined that Plaintiffs reduced their hours appropriately in the exercise of billing judgment.

Defendants specifically complain in their argument before the Tenth Circuit that Plaintiffs claim an unreasonable amount of fees for filing the notice of appeal, for time spent

---

[51]Doc. 139 at 14.

drafting the reply brief, and for oral argument.  They request a $10,000 deduction of these fees.[52]
The Court has reviewed the hours spent on these tasks—preparing a notice of appeal, two
appellate briefs, and preparing for and presenting oral argument—and does not find that the
hours expended are unreasonable.  Clearly, these issues were novel and heavily litigated,
prompting Defendants to seek rehearing and to further appeal to the United States Supreme
Court.  As with the previous proceedings in this case, the Bopp firm heavily relied on work
performed by associates, with Mr. Bopp's supervision.  While this likely required more hours
expended than if a seasoned attorney such as Mr. Bopp had performed these services
exclusively, it operated to reduce Plaintiffs' overall fees by keeping the hourly rates far lower.
The Court finds this approach reasonable and declines Defendants' invitation to arbitrarily
reduce the fee award on the prevailing party appeal to $10,000.

   vi.    **Time Spent Preparing Fee Application**

   Finally, Defendants argue that Plaintiffs should not recover unreasonable fees for time
spent on preparing the fee application, suggesting there are unreasonable hours claimed for time
spent by attorneys new to the case getting up to speed.  "An award of reasonable attorneys' fees
may include compensation for work performed in preparing and presenting the fee
application."[53]  The Court has reviewed the billing records involving the work on Plaintiffs' fee
requests and finds that the hours expended through August 24, 2011, are reasonable (the records
originally submitted with the first memorandum in support of the fee award).  Plaintiff then

---

[52]Defendants primarily relied on the argument that the fee request should be dismissed due to the failure to
consult in this Court's local rules.  As already discussed, the Court does not find that Plaintiffs are barred from
recovering attorneys' fees under the Court's local rule.

[53]*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998).

supplemented its fee request on October 27, 2011, claiming reasonable hours spent preparing the reply.  The Court also finds these hours were reasonably spent.  It appears that much of the fee application preparation occurred back in 2009, when Plaintiffs first sought attorneys' fees but were denied based on entitlement, rather than the reasonableness of the fees.  The Court is unable to conclude that these remaining hours are "obviously inflated to an intolerable degree" warranting the sanction of disallowing recovery for time spent preparing and presenting the fee application.[54]

### b.       Reasonable Hourly Rate

 In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community."[55]  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[56]  In making this determination, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[57]

Plaintiffs request rates ranging from $170 to $275 for the attorneys involved in this matter as follows: $275 for Bopp, $250 for Coleson and Marzen, $180 for Gallant, $170 for

---

[54]*Id.* at 1255.  While the Court will allow supplementation after this Order is entered on the fees incurred in responding to the petition for writ, it will not allow recovery of any further fees spent briefing the fee application.  Had Plaintiffs simply waited for the Tenth Circuit's mandate before filing the instant motion, significant expense could have been saved by both parties briefing issues such as jurisdiction that ultimately became moot.  Instead, the Court was required to allow further supplementation after the Mandate, resulting in eight total briefs on this motion.

[55]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[56]*See Case*, 157 F.3d at 1256.

[57]*Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

Neeley, Lee, and Woudenberg, and $150 for Phillips.  Plaintiffs submit the following evidence in support of these rates: (1) the declaration of Joseph Patton, an attorney practicing for 31 years in Topeka, Kansas; (2) Bopp's declarations; (3) Vincent's declaration; and (4) rates awarded to many of the same counsel in this Court's previous fee award in *Yost v. Stout*, Case No. 06-4122, Doc. 93 (Dec. 4, 2009); (5) national survey evidence showing that rates have increased for "well-experienced attorneys" by 9.25% and by 15.6% for fifth year associates.  Defendants object to the rates sought by Plaintiffs and ask the Court to calculate the lodestar according to the same rates approved in *Yost*.

Mr. Bopp's declaration states that he has billed his firms' attorney time "according to the prevailing market rates for comparable cases in Wisconsin, for attorneys with comparable skill, experience, and reputation."[58]  But this is not the relevant market, so Mr. Bopp's declaration is not probative of the prevailing market rate for civil rights attorneys in the Topeka, Kansas market.

Mr. Patton's declaration establishes that he has extensively practiced in the state and federal courts in and around Topeka and that he is familiar with the market rates for attorneys who litigate in and around Topeka.  He declares that, based on his experience practicing in the Topeka legal market, his knowledge of his firm's billing rates, and the market for attorneys representing clients in litigation, "the rates requested by Mr. Bopp and his associates are well within the range of, and do not exceed, what my firm and other firms in the Topeka market charge their clients for representation in complex civil litigation, at the experience levels

---

[58]Doc. 131 ¶ 9.

23

indicated, by counsel with skills and experience commensurate with their years of practice."[59]

Defendants submit the declaration of attorney Todd N. Thompson, a private practitioner in Lawrence, Kansas for over twenty-nine years with extensive experience in civil litigation in the Topeka, Kansas market. He states that the following hourly rates for legal work done during 2006 are consistent with the prevailing rates in the Topeka and northeast Kansas legal market: $190-250 for attorneys with 25 years or more of experience; $170 to 215 for those with 15 to 20 years of experience; $160 to 190 for those with 10 to 15 years of experience; $130 to 170 for those with 5 to 10 years of experience; and $115 to 150 for those with under 5 years of experience.

Thompson's declaration generally supports the Court's findings two years ago in *Yost v. Stout*. There, the Court awarded reasonable attorneys' fees and expenses to the same Plaintiffs' counsel, based on the evidence before it at that time, December 4, 2009. While these findings assist the Court in its reasonableness determination, it is not bound by findings made over two years ago in a different case submitted with different evidentiary support. In *Yost*, the Court relied on a different affidavit submitted by Defendants that provided slightly different estimated hourly rates. Contrary to Plaintiffs' characterization of the Court's findings in that Order, the Court did not simply "rely on defense rates when evidence of the plaintiffs' market [rate] is available." The Court found that Plaintiff Yost, as the moving party, failed to support his requested rates with evidence that supported the market rates in the relevant community. As a result, the Court gave weight to the Defendants' affidavit in that case establishing reasonable

---

[59]Doc. 132 ¶ 5.

rates in the relevant community for civil rights actions.  Defendants have submitted a different

affidavit in this case and Mr. Patton's affidavit differs in that it does not set forth specific rates as

compared to his affidavit in *Yost*.

Furthermore, the Court must consider that the fees sought in this case were incurred over

a six-year time frame, whereas the fees in *Yost* took place over a much shorter period of time that

ended two years ago.  Certainly, Plaintiffs' counsel's rates have risen over that time so an

increase in the rates used by the Court in *Yost* is reasonable.  Moreover, the rates sought by

Plaintiffs are not out of step with the rates claimed by Mr. Thompson to be reasonable.  For

example, attorneys Woudenberg and Neeley have both practiced for 7 years; during the course of

this litigation they have been practicing for between 2 and 7 years.  In 2006, an attorney with 5

to 10 years' experience, according to Thompson, would reasonably charge up to $150 per hour.

The Court has reviewed the experience levels of each timekeeper and finds that the requested

rates are reasonable rates in the northeast Kansas community for civil rights attorneys.

The Court further finds that local counsel Austin Vincent's requested rate of $200 is

reasonable in this market.  He has been in practice for thirty years and attests that this rate is

reasonable given his experience and reputation, and given the type and nature of the litigation.

**c.     Lodestar Amount**

After discounting the hours reasonably spent on this litigation as submitted by Plaintiffs,

the Court arrives at the following lodestar amount:[60]

---

[60]The Court rounds the discounted hours to the nearest tenth of an hour, in accordance with counsel's
practice.

| Attorney | Hours claimed | Itemized reductions | Reasonable hours after % reduction | Rate | Lodestar |
|---|---|---|---|---|---|
| Bopp, James | 66.4 | | 66.4 | $275 | 18,260.00 |
| Bostrom | 0.1 | | .1 | 250 | 25.00 |
| Marzan | 93.4 | -.5 | (10%) 83.6 | 250 | 20,900.00 |
| Coleson | 0.9 | -.3 | .6 | 250 | 150.00 |
| Gallant | 159.8 | | (15%) 135.8 | 180 | 24,444.00 |
| Woudenberg | 329.1 | -.3 | (15%) 279.5 | 170 | 47,511.60 |
| Neeley | 85.3 | -1.4 | (15%) 71.3 | 170 | 12,121.00 |
| Neeley (travel) | 13.5 | | 13.5 | 125 | 1687.50 |
| Lee | 203.2 | | (15%) 172.7 | 170 | 29,359.00 |
| Phillips | 3.2 | | (15%) 2.7 | 150 | 405.00 |
| Haynie | 0.2 | | (15%) .2 | 125 | 25.00 |
| Bopp, Katie | 3.2 | -3.2 | 0 | | 0 |
| Vincent (local counsel) | 12.10 | -.25 | 11.9 | $200 | 2380.00 |
| **Total** | | | | | $157,268.10 |

## 2.   Adjustment

"The lodestar is the presumptively reasonable fee."[61]  But it does not end the inquiry.[62]

The court may adjust the lodestar upward or downward if necessary.[63]  In fashioning the ultimate

---

[61]*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994).

[62]*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005), *overruled on other grounds by Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n.2 (10th Cir. 2002).

[63]*Metz*, 39 F.3d at 1493.

award, the Court may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*,[64] although many of those factors are subsumed within the lodestar calculation.[65]

In evaluating whether the lodestar should be adjusted when the prevailing party achieves only partial success, the Court should consider: (1) whether plaintiffs failed to prevail on claims that were unrelated to the claims on which they succeeded, and (2) whether plaintiffs achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."[66]  In considering whether a downward adjustment for partial success on related claims is warranted, the court should not consider the case "as a series of discrete claims.  Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[67]

Defendants first argue that a lodestar reduction for partial success is warranted because Plaintiffs only succeeded in obtaining an injunction; they did not obtain a declaratory judgment that the canons were unconstitutional.  The Tenth Circuit determined on the prevailing party appeal that Plaintiffs succeeded on a significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit.[68]  The court found this was determinative on whether Plaintiffs were "prevailing parties" under the statute, but found that the degree of success goes to the amount of fees.  The court also observed that Plaintiffs obtained the

---

[64]488 F.2d 714, 717–19 (5th Cir. 1974).

[65]*See Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983).

[66]*Id.* at 434.

[67]*Id.* at 435.

[68]*Kan. Judicial Watch v. Stout*, 653 F.3d 1230, 1240 (10th Cir. 2011).

preliminary injunction in this case "largely because their likelihood of success on the merits was never seriously in doubt."[69]  The Court finds that a reduction for partial success is warranted on this basis, albeit much less of a reduction that Defendants insist is appropriate.  While this Court's preliminary injunction order "represented an unambiguous indication of probable success on the merits,"[70] it is also true that Plaintiffs did not achieve all of the relief sought, which included declaratory relief.

Further, Plaintiffs did not succeed on their recusal canon claim.  Plaintiffs voluntarily reduced some of their hours spent on this claim—namely time spent preparing the Complaint, and briefing the motion for preliminary injunction.  But the billing records do not reflect that the pre-Complaint preparatory and research work was discounted for partial success.  This work included preparing the judicial candidate Questionnaire that formed the basis of Plaintiffs' challenges to all three canons.  While Plaintiffs made some reductions, they all appear to have been made in the exercise of billing judgment, rather than as reductions for partial success.

While the significance of the overall relief obtained by Plaintiffs justifies the majority of the lodestar fee award, the Court finds that at slight reduction is warranted based on the failure to discount more of the pre-Complaint work to reflect their partial success and to reflect that they did not achieve declaratory relief.  Therefore, the Court imposes an additional 10% reduction of the lodestar to account for Plaintiffs' partial success—for obtaining preliminary injunctive relief only and for prevailing on two of the three canons at issue in this case.  Plaintiffs' lodestar is therefore reduced to $141,541.29.

---

[69]*Id.* at 1239.

[70]*Id.* at 1241.

D.        **Costs and Expenses**

Plaintiffs also seek expenses and costs, including items such as fax expenses, postage, computer-assisted research, photocopies, filing fees, and transcripts.  Plaintiffs fail to distinguish between those items that are recoverable with their attorneys' fees as expenses, and those items that are not reimbursable as attorneys' fees but are properly recoverable as costs.  In total, Plaintiffs seek $20,500.73 in costs and expenses.

Under Fed. R. Civ. P. 54(d), taxable costs should be allowed to the "prevailing party" unless a federal statute, rule, or court order provides otherwise.  D. Kan. Rule 54.1 sets forth the procedure for requesting costs pursuant to 28 U.S.C. § 1920 in this district; the prevailing party must file a bill of costs and memorandum in support.  The bill of costs is considered in the first instance by the Clerk.  After the Clerk taxes costs, and if Defendants object to the Clerk's action, they may file a motion to review.  Therefore, the Court does not address taxable costs such as court fees and transcript costs, at this time.  Plaintiffs have not separately filed a bill of costs and a review of Plaintiffs' billing records reflects approximately $8432 of the claimed expenses should be requested instead as costs, so the Court backs out this amount from the expenses claimed.  Upon entry of this Order, the Clerk shall enter Judgment and the deadline for filing a bill of costs will run from the date of this Judgment if no appeal is filed.[71]

The Tenth Circuit has explained that "reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate."[72]  It is the prevailing party's burden to

---

[71]*See* D. Kan. R. 54.1(a)(1).

[72]*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998).

establish the amount of expenses to which it is entitled.[73]

The vast majority of expenses claimed are for computer-assisted research.  The Tenth Circuit has explicitly acknowledged that computer-assisted research, while not taxable under § 1920, is a "substitute for an attorney's time that is compensable under an application of attorney's fees."[74]  Thus, the Court must determine whether the expense request is reasonable.  It is not.  The degree of documentation for this research is inconsistent.  In most cases, the billing records indicate the purpose of the research session and the Court finds that these expenses are reasonable, but often there is no description at all or it is limited to a vague reference such as "certification issue."  These latter entries allow for no meaningful review to determine reasonableness.  After a review of the billing records, the Court finds that a reduction of the claimed expenses is appropriate to account for the failure to adequately document how approximately $2140 was spent on research in this matter.  The Court further finds that the remaining items of expenses—long distance phone charges, fax charges, postage, and Fed Ex charges—were reasonably incurred and are usually billed in addition to these attorneys' hourly rates.

Defendants argue that many of the expenses are items that should be absorbed as overhead and not billed to the client.  But Defendants only specifically object to $4750 in expenses sought for the printing and binding of Plaintiffs' appellate briefs in the prevailing party appeal.  But this is an item that is properly characterized as costs, so it will be addressed by the Clerk in the first instance.  The Court declines to rule on any objection to this item of costs at

---

[73]*Id.*

[74]*See, e.g.*, *Sorbo v. UPS*, 432 F.3d 1169, 1180 n.11 (10th Cir. 2005).

this time.

After accounting for the reduction in expenses for computer-assisted research and backing out charges for categories that are properly recoverable as costs, the Court awards Plaintiffs $9928.79 in expenses.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Third Motion for Attorney Fees (Doc. 127) is **granted**.  Plaintiffs are awarded reasonable attorneys' fees in the amount of $141,541.29 and expenses in the amount of $9928.79, for a total award of $151,470.08.

**IT IS FURTHER ORDERED** that the Clerk shall enter Judgment in this matter. Plaintiffs may file their Bill of Costs and memorandum in support according to the procedures set forth in D. Kan. Rule 54.1.

**IT IS FURTHER ORDERED** that the parties are ordered to meet and confer and make a good faith attempt to negotiate any remaining claim by Plaintiffs for attorneys' fees associated with responding to Defendants' Petition for Certiorari before the United States Supreme Court. If Plaintiffs must file a supplemental declaration, it shall include a statement of consultation, and it shall be filed within **fourteen (14) days** of this Memorandum and Order.

Dated: <u>March 27, 2012</u>

               <u>S/ Julie A. Robinson</u>
               JULIE A. ROBINSON
               UNITED STATES DISTRICT JUDGE